UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SOPHIA RENEE COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00511-JRS-DLP |
| | ) | |
| CHRISTOPHER BENSHIEMER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Sophia Renee Coleman brings this civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff alleges that the defendant, Christopher Benshiemer, violated her Fourth and Fourteenth Amendment rights when he arrested her without a valid warrant. Before the Court is the defendant's motion for summary judgment. For the reasons explained in this Order, the defendant is entitled to summary judgment on all of Ms. Coleman's claims.

**I.
Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make

credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.
## Factual Background

The following facts are drawn from the undisputed evidence or, where disputed, are set forth in the light most favorable to the non-moving party.

Ms. Coleman was charged with forgery in 2014. She pled guilty to the charge and was sentenced to three years on house arrest through community corrections. Dkt. 46-1, Deposition of Sophia Coleman, at 14. On February 3, 2017, her house arrest was revoked and she was remanded to IDOC custody. Upon her return to the Indiana Department of Correct, (IDOC), Ms. Coleman's earliest possible release date (EPRD) was March 25, 2018. *Id.* at 15.

On June 13, 2017, Plaintiff was transferred to a work release program at the Craine House in Indianapolis, Indiana. Her EPRD remained March 25, 2018. *Id*. at 16. On August 28, 2017, Ms. Coleman was found with a cell phone, which was a violation of Craine House rules. She feared she would be returned to a prison facility because she had violated the Craine House rules. Rather than risk returning to prison, on August 28, 2017, she absconded from state custody at the Craine House. *Id*. at 17. The same day, she contacted Indianapolis Metro Police Department and informed them that she had left Craine House and that she would turn herself in once she regained custody of her child. The dispatch officer said there was no warrant for Ms. Coleman but that it might take 48 hours for it to show up in the department's computer system. *Id*. at 18-19.

On August 29, 2017, IDOC issued a "Warrant for Retaking Offender," Warrant No. 2017-088, to return Plaintiff to IDOC custody. Dkt. 40-1. Ms. Coleman believes that the warrant violates IDOC policy because it was not signed by a judge. Dkt. 46-1 at 45-47.

Ms. Coleman tried to regain custody of her child from the Department of Child Services (DCS). A DCS employee told Ms. Coleman that Ms. Coleman could not take care of her child because she was a fugitive from the law. *Id.* at 22. Ms. Coleman tried to turn herself in on many occasions but was always told that there was no warrant for her arrest. She did not contact Craine House. *Id.* at 24-25.

During this time, Ms. Coleman learned she was pregnant. Her doctor told her about a prison program that allowed a mother to keep her newborn with her in prison, so Ms. Coleman renewed her efforts to turn herself in. *Id.* at 25. She called the state court, bail bondsmen, and the sheriff's department and was repeatedly told that there was no warrant for her arrest. She was very worried and asked her doctors and social workers to call on her behalf to try to turn herself in. *Id.* at 26-27. She checked the IDOC website and saw that she was not listed as escaped. A form she received from the Internal Revenue Service showed that she had been incarcerated during the time that she had escaped. *Id.* at 29.

On May 21, 2018, a few days after Ms. Coleman delivered her baby, defendant Benshiemer removed Ms. Coleman from her residence and returned her to IDOC custody. *Id.* at 30, 32, 34. She was taken to Indiana Women's Prison. After three days in the infirmary she was placed in solitary confinement. *Id.* at 28, 24-25. Upon her return to IDOC custody, Ms. Coleman's EPRD was December 18, 2018. This was based on the amount of time left on her original sentence prior to absconding IDOC custody. *Id.* at 39-40.

On June 1, 2018, IDOC held a disciplinary hearing regarding Ms. Coleman's alleged

illegal possession of a cell phone while at Craine House, as well as her escape from Craine House. She was found guilty of both disciplinary violations and her EPRD changed from December 18, 2018, to January 17, 2019. *Id*. at 37-38; 41. She was released from IDOC custody on January 17, 2019. *Id*. at 41. She never filed a petition for writ of habeas corpus alleging any constitutional violation and neither her conviction nor her disciplinary convictions were ever overturned. *Id*. at 51-52.

### III.
### Discussion

The defendant argues that Ms. Coleman's claim should be construed as an official capacity claim and is therefore barred by the Eleventh Amendment. But the Seventh Circuit has held that "in a suit where the complaint alleges the tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies, even if the plaintiff failed to spell out the defendant's capacity in the complaint." *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991).

The defendant argues that he is entitled to qualified immunity because retaking Ms. Coleman into IDOC custody did not violate the Fourth Amendment. Qualified immunity from suit under § 1983 is founded on the principle that government employees should not be held personally liable "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Application of qualified immunity has two prongs, (1) whether the plaintiff suffered the deprivation of a constitutional right and, if so, (2) whether the right was clearly established at the time of the alleged conduct. The district court has discretion as to which prong to apply first because in some cases it is more prudent to find that a constitutional right is not clearly established rather than decide an unsettled constitutional question. *Pearson v.*

*Callahan*, 555 U.S. 223, 236-242 (2009) (partially overruling *Saucier v. Katz*, 533 U.S. 194 (2001)). Because it is dispositive, the Court will address the first prong first.

The undisputed evidence shows that the defendant took Ms. Coleman back into IDOC custody pursuant to a warrant issued by the IDOC. The warrant was issued pursuant to Indiana Code § 11-8-2-5 which gives the IDOC Commissioner authority to "issue warrants for the return of escaped committed persons (an employee of the department or any person authorized to execute warrants may execute a warrant issued for the return of an escaped person)." Neither party points to caselaw discussing the constitutionality of this provision.

This Court holds that Ms. Coleman's Fourth Amendment rights were not violated when she was returned to IDOC custody following her escape from Craine House pursuant to a warrant issued pursuant to Indiana Code 11-8-2-5. The Fourth Amendment provides that a judge may issue a warrant only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." But Ms. Coleman was not in the position of a free citizen facing arrest. She had already been convicted and sentenced when she absconded from state custody. In such circumstances, the Fourth Amendment oath or affirmation clause does not apply. *See Gravely v. Madden*, 142 F.3d 345, 348 (6th Cir. 1998) ("The Fourth Amendment is not triggered anew by attempts at recapture because the convict has already been "seized," tried, convicted, and incarcerated.").

It is well settled that convicted prisoners do not enjoy the full protections of the Fourth Amendment. *See King v. McCarty*, 781 F.3d 889, 899 (7th Cir. 2015). The Supreme Court has held that a judicial warrant is not required in the probation setting. *Griffin v. Wisconsin*, 483 U.S. 868, 876, 107 S. Ct. 3164, 3170, 97 L. Ed. 2d 709 (1987) ("warrant requirement would interfere . . . with the probation system, setting up a magistrate rather than the probation officer as the judge

of how close a supervision the probationer requires"); *see also Henderson v. Simms,* 223 F.3d 267 (4th Cir. 2000) (Maryland statute authorizing prison wardens to issue retake warrants for parolees was found by the Fourth Circuit not to violate the Fourth Amendment); *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 885 (9th Cir. 2007) ("We hold that neither 18 U.S.C. § 4213 nor the Fourth Amendment require an oath or affirmation for the issuance of a valid administrative warrant for the retaking of an alleged parole violator."). Other courts have interpreted *Griffin* to apply in the context of the retaking of an escaped prisoner. *See United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (administrative warrant and search of apartment for convicted escapee did not violate Fourth Amendment).

Although the circumstances of the defendant's recapture of Ms. Coleman within days of her giving birth to a child are unfortunate, particularly in light of her repeated attempts to turn herself in, her return to IDOC custody did not violate the Fourth Amendment.[1] In the absence of a constitutional violation, the defendant is entitled to qualified immunity. Because there was no constitutional violation the Court need not consider whether the right was clearly established, nor need the Court consider the defendant's assertion that the plaintiff's claims are barred by *Heck*.

---

[1] Ms. Coleman argued at her deposition that her arrest violated IDOC policy, but violations of state law or IDOC policy do not support a claim under § 1983. *See Waubanascum v. Shawano Cty.*, 416 F.3d 658, 670 (7th Cir. 2005) (stating a violation of state law does not provide a basis for liability under § 1983); *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) ("State law violations do not form the basis for imposing § 1983 liability.").

## IV.
## Conclusion

For the reasons stated above, the defendants' motion for summary judgment, dkt. [38], is **granted**.  Final judgment consistent with this Order shall issue.

**IT IS SO ORDERED.**

Date:  6/25/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

SOPHIA RENEE COLEMAN
2002 W. Morris St.
Indianapolis, IN 46221

Courtney Lyn Abshire
courtney.abshire@atg.in.gov

David W. Craig
CRAIG KELLEY & FAULTLESS
dcraig@ckflaw.com

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL
archer.rose@atg.in.gov